UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No.: 1:09-cr-46 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| SHANNA DEE RAMIREZ | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Before the Court is Defendant Shanna Dee Ramirez's ("Defendant") motion for judgment of acquittal (Court File No. 28), pursuant to Federal Rule of Criminal Procedure 29(c). The United States filed a response (Court File No. 29), and Defendant did not reply. Defendant claims she is entitled to a judgment of acquittal because the only evidence presented by the United States was her own uncorroborated statements, which are insufficient to support a guilty verdict. For the reasons that follow, the Court will **DENY** Defendant's motion (Court File No. 28).

**I.      FACTS AND PROCEDURAL HISTORY**

This cases arises from a federal investigation of Durrett Cheese Sales, Inc. ("Durrett Cheese"), which was under suspicion of hiring employees who were unlawfully present in the United States. Defendant was involved with the hiring of new employees at Durrett Cheese. One role Defendant performed was to review applicants for open positions. She testified at trial she had the power to recommend applicants for hire, though the hiring decision had to be approved by her superiors. Her responsibilities also included reviewing the identification provided by applicants,

1

such as their alien registration card or social security card, and preparing documents required for new employees, such as the I-9 "Employment Eligibility Verification" form. After these documents were complete, it was Defendant's responsibility to decide whether to recommend the applicant for hire. One of the employees unlawfully hired by Durrett Cheese was Defendant's cohabitating boyfriend, Roberto Flores ("Flores").

The government secured an indictment against Defendant, alleging she knowingly participated in unlawfully hiring persons she knew were illegally in the United States. The government alleged Defendant knew many of these employees were ineligible for employment. Defendant admitted at trial she believed many of the social security cards and alien registration cards provided by the applicants were "poor fakes" (Court File No. 27, "Ramirez Tr." at 114-16). In addition, prior to trial, Defendant had told federal investigators she knew many of the applicants, including her boyfriend, Flores, were unlawfully living in the United States when they were hired (Court File No. 27, "Adkins Tr." at 20-22). In the case of Flores, Defendant admitted at trial she completed his employment documents for him, including signing his name to the W-4, before recommending him to be hired to her superiors (Ramirez Tr. at 120).

During the investigation of Durrett Cheese, Defendant was called to testify before a grand jury. In the course of this proceeding, Defendant denied knowing Flores was unlawfully living in the United States and denied knowing he had used false documents to secure employment (Court File No. 27, "Britain Tr." at 37-38). Based on her prior statements to investigators, the government charged Defendant with two counts of making a false statement to a grand jury.

Defendant was tried before a jury and convicted of conspiracy and aiding and abetting in use of false social security numbers for the purpose of obtaining employment. The jury also convicted

2

Defendant on two counts of making a false statement to the grand jury.

## II. STANDARD OF REVIEW

In considering a motion under Fed. R. Crim. P. 29(c), "the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). The Court must evaluate the evidence within the context of the entire record, *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984), but the Court does not weigh the credibility of witnesses or the weight of the evidence. *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002).

## III. DISCUSSION

Defendant argues she is entitled to a judgment of acquittal because her conviction rests on insufficient evidence and uncorroborated admissions.

Generally, an accused may not be convicted by her own uncorroborated confession. *Smith v. United States*, 348 U.S. 147, 152-53 (1954); *United States v. Marshall*, 863 F.2d 1285, 1287 (6th Cir. 1988). The rule's "purpose is to prevent errors in convictions based upon untrue confessions alone." *Smith*, 348 U.S. at 153. The concern is "[c]onfessions may be unreliable because they are coerced or induced" or may be unreliable because "it is extracted from one who is under the pressure of a police investigation." *Id.* Because factual admissions made out of court have the same possibilities for error as confessions, they too must be corroborated. *Opper v. United States*, 348 U.S. 84, 91 (1954).

3

Corroboration of every element of an offense established by statements of the accused is not necessary. The government need only "introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* at 93. Such an inference of truth is established where the government introduces "proof that the criminal act took place–the so-called '*corpus delicti.*'" *United States v. Marshall*, 863 F.2d 1285, 1287 (6th Cir. 1988); *United States v. Henderson*, 307 F.App'x 970, 979 (6th Cir. 2009). "Where such *corpus delicti* is offered into evidence, separate corroboration of a post-arrest statement is not required." *Henderson*, 307 F. App'x at 979. However, "[i]n cases where there is no clear proof of the *corpus delicti*, courts have required independent evidence corroborating defendant's statements." *Marshall*, 863 F.2d at 1287.

For each count, Defendant argues the United States did not offer evidence sufficient to support a guilty verdict. In addition, to the extent the evidence actually offered consists of Defendant's own statements, she argues the statements were inadequately corroborated. Thus, for each count, it is necessary to consider both whether the evidence, viewed in the light most favorable to the government, could support a reasonable jury finding of guilt beyond a reasonable doubt and whether the evidence in the form of Defendant's own statements were corroborated with substantial independent evidence sufficient to justify a jury inference of their truth.

## A. Conspiracy, 18 U.S.C. § 371, to Falsely Use a Social Security Number, 42 U.S.C. § 408(a)(7)(B).

Defendant was convicted under 18 U.S.C. § 371 for conspiracy to falsely use a social security number, in violation of 42 U.S.C. § 408(a)(7)(B).

To establish a conspiracy in violation of § 371, the government must prove beyond a reasonable doubt that there was "an agreement between two or more persons to act together in committing an offense, and an overt act in furtherance of the conspiracy." *United States v. Hunt*, 521 F.3d 636, 647 (6th Cir. 2008) (quoting *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000)). This has been broken down into a four-part test: 1) the conspiracy described in the indictment was wilfully formed, and was existing at or about the time alleged; 2) the accused wilfully became a member of the conspiracy; 3) one of the conspirators thereafter knowingly committed at least one overt act charged in the indictment at or about the time and place alleged; and 4) that overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged. *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004) (citing *United States v. Kraig*, 99 F.3d 1361, 1368 (6th Cir. 1996). The government need not show a formal written agreement; a tacit or mutual understanding among the conspirators will suffice. *Hunt*, 521 F.3d at 647 (6th Cir. 2008). Likewise, direct evidence of the conspiracy is not required, because the existence of a conspiracy may be inferred from circumstantial evidence which a reasonable person could interpret as showing participation in a common plan. *Id.*

Defendant argues the United States offered insufficient evidence of a conspiracy to falsely use a social security number and argues the evidence actually offered was inadequately corroborated. The evidence in this case, however, supports a reasonable jury finding of a conspiracy to falsely use a social security number .

Section 408(a)(7)(B) prohibits an individual from falsely representing a number to be the social security number assigned to him for the purpose of obtaining employment. The elements of the offense are 1) false representation of a social security account number, 2) with intent to deceive, 3) for any purpose. *United States v. Means*, 133 F.3d 444, 447 (6th Cir. 1998).

At trial, Defendant admitted she recognized the social security cards provided by potential employees to be poor fakes, yet she still certified their I-9 "Employment Eligibility Verification" form as "true and correct" to the best of her knowledge and then recommended to her superiors they be hired (Ramirez Tr. at 114-16). In addition, Defendant prepared all of the employment documents for Flores, her cohabitating boyfriend, including signing his name for him on his W-4, before she made the same certification of accuracy and recommended he be hired (Ramirez Tr. at 120). Though Defendant claimed at trial she did not know at the time Flores was ineligible for employment in the United States, Defendant had previously told federal investigators she knew he was unlawfully present in the United States when she completed his documents and recommended he be hired (Ramirez Tr. at 118-19; Adkins Tr. at 20-22). From this evidence, a reasonable jury could conclude Defendant knowingly agreed and participated in a conspiracy to violate § 408(a)(7)(B).

On the first two elements, there is sufficient evidence of an agreement both wilfully formed and wilfully joined by Defendant. Though the United States did not prove a formal conspiratorial agreement, the evidence supports a reasonable inference of a tacit agreement or mutual understanding. Defendant admitted at trial she knew some of the employees' social security information to be poor fakes (Ramirez Tr. at 114-16). This would allow a jury to conclude she knew the employees were not lawfully permitted to work in the United States when Defendant certified

6

them as eligible for employment and recommended they be hired despite this knowledge. In addition, with regard to her cohabitating boyfriend, Defendant admitted to government investigators she knew him to be ineligible when she drafted his employment documents, signed his name, and recommended him for hire to her superiors (Ramirez Tr. at 114-16). At a minimum, the jury could have reasonably interpreted Defendant's conduct to indicate a tacit agreement to assist her boyfriend, and potentially several others, in violating § 408(a)(7)(B).

Furthermore, all of this evidence has been adequately corroborated to the extent necessary. To the extent the jury's conclusion was based on Defendant's in-court admission she knew many of the employees' documents to be fake, this admission does not need corroboration, because the corroboration rule applies only to post-offense, extrajudicial statements. *Opper*, 348 U.S. at 91. To the extent the jury's conclusion is based on Defendant's extrajudicial statement to investigators concerning her knowledge of Flores's eligibility, this evidence is adequately corroborated.

The government argues it corroborated this statement through evidence of the *corpus delicti*: there was no dispute at trial Flores used a fake social security number to obtain employment. The Sixth Circuit has held, however, when the *corpus delicti* is the object of a conspiracy, it is only necessary to corroborate a charge for the underlying offense but not for the conspiracy itself. *See Henderson*, 307 F.App'x at 979 (concluding in a drug conspiracy case that the drugs themselves serve to corroborate statements concerning possession or intent to distribute but not of conspiracy to possess or distribute). Therefore, more than the underlying offense is needed to corroborate Defendant's admission concerning her knowledge of the conspiracy.

In this case, the extrajudicial statements were not the only evidence of Defendant's knowledge concerning Flores's eligibility. Rather, the statements primary purpose was to impeach

7

Defendant's in-court denial that she knew Flores was ineligible to work in the United States when she hired him. The jury could have also inferred Defendant's knowledge either from the intimate relationship they shared or Defendant's pattern of behavior concerning helping other employees obtain unlawful employment. In addition, Flores's first application for employment was rejected by Defendant's superiors, because the identifying information he provided was inconsistent with information he had provided in a previous application. Defendant then assisted Flores in submitting new information which matched his earlier application. From this the jury could have reasonably inferred the truth of Defendant's extrajudicial statements, where she had admitted knowing Flores was ineligible for employment.

On the second two elements, the jury could have reasonably concluded Defendant knowingly committed an overt act in furtherance of the conspiracy, because she admitted at trial to certifying the employment documents and recommending her boyfriend and the other employees be hired (Ramirez Tr. 114-16). As discussed above, the jury could have reasonably concluded Defendant knew her boyfriend and the others were ineligible for employment when these certifications occurred. Based on her conduct in light of that knowledge, the jury could have also reasonably concluded Defendant purposefully certified them for employment to facilitate their use a false social security number to obtain employment, which was the object of the conspiracy. Because this conclusion is based on Defendant's in-court admission that she certified the applications, corroboration is unnecessary. *See Opper*, 348 U.S. at 91.

Because Defendant's conviction for conspiracy was based on sufficient evidence and because the evidence in the form of her extrajudicial admissions were adequately corroborated, a judgment of acquittal on the charge of conspiracy would be improper.

### B. Aiding and Abetting in the Use of a False Social Security Number, 42 U.S.C. § 408(a)(7)(B).

Defendant was also convicted of aiding and abetting another in using a false social security number, in violation of § 408(a)(7)(B).

Aiding and abetting requires the government prove 1) an act by Defendant that contributes to the execution of a crime and 2) the intent to aid in the crime's commission. *United States v. Penney*, 576 F.3d 297, 316 (6th Cir. 2009).

First, the evidence offered by the government supports a reasonable jury finding that Defendant committed an act that contributed to the execution of a crime. Defendant admitted at trial she certified the I-9 Employment Eligibility Verification forms for multiple employees and recommended they be hired, even though they were ineligible for employment in the United States (Ramirez Tr. 114-16). This routine was repeated when Defendant hired Flores, with the additional deliberate act of signing Flores's name to the employment documents. This act by Defendant contributed to the crime of using a false social security number.

Second, the evidence also supports a finding Defendant intended to aid in the crime's commission. Especially with regards to Flores, the jury could have reasonably concluded Defendant stood to personally gain from unlawfully hiring her boyfriend, since the two were sharing a household at the time. As in the context of the conspiracy charge, the jury could have also reasonably found Defendant knew Flores's and the other employee's employment was unlawful, while still intentionally assisting by certifying their applications as eligible for employment.

For the reasons discussed in the context of conspiracy, to the extent some of this evidence is based on Defendant's extrajudicial statements, those statements were adequately corroborated by significant independent evidence. Therefore, judgment of acquittal is improper on Defendant's

9

conviction for aiding and abetting in the use of a false social security number.

### C. False Declarations, 18 U.S.C. § 1623(a).

Defendant was convicted on two counts of making false declarations, in violation of 18 U.S.C. § 1623(a). Both false declarations occurred in the same grand jury proceeding, and both statements related to Defendant's awareness of Flores's eligibility to work in the United States. In the first question, the indictment stated Defendant was asked "whether [Flores] used fraudulent documents to get a job." Defendant responded "I don't know." In the second question, Defendant was asked, "So you didn't know your boyfriend was illegal?" Defendant responded, "No, I didn't." (Court File No. 1).

To convict an individual of a violation of § 1623, for making a false statement to a grand jury, the government must prove that the defendant 1) knowingly made, 2) a materially false declaration, 3) under oath, and 4) in a proceeding before or ancillary to any court of the United States. *United States v. Safa*, 484 F.3d 818, 821 (6th Cir. 2007).

Defendant testified at a grand jury proceeding examining allegations of unlawful employment practices at Durrett Cheese (Britain Tr. at 37-38). The only element disputed by Defendant in her motion for acquittal at the close of the government's evidence (Court File No. 27, at 57-60) and following the jury verdict (Court File No. 28, at 6) is whether the statements were knowingly made.

As discussed in the context of Defendant's conviction of conspiracy, the evidence offered by the government supports a reasonable jury finding that Defendant knew at the time Flores was hired he was both ineligible for employment and was using false documents to secure employment. Also as discussed above, to the extent some of this evidence consisted of Defendant's extrajudicial

statements, those admissions were adequately corroborated. Therefore, judgment of acquittal is improper on Defendant's conviction for making a false statement.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's motion for judgment of acquittal (Court File No. 28) will be **DENIED**.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**